UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA KAY HUBBARD,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:16-cv-00710-KJM-KJN<br><br><br><u>FINDINGS AND RECOMMENDATIONS</u> |

Plaintiff Diana Kay Hubbard seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income under Title XVI of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff principally contends that the Commissioner's decision that she is not disabled is based upon legal errors and lacks substantial evidence to support it. (ECF No. 15.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 22.) Thereafter, plaintiff filed a reply brief. (ECF No. 23.)

For the reasons that follow, the court recommends that plaintiff's motion for summary judgment be DENIED and the Commissioner's cross-motion for summary judgment be

---

[1] This action proceeds before the undersigned pursuant to Local Rule 302(c)(15).

1

GRANTED.

I. BACKGROUND

Plaintiff was born on April 3, 1969; attended 11 years of school; obtained a GED and a manicuring license; and previously worked as a driver for Pep Boys. (Administrative Transcript ("AT") 26–27, 141.)[2] On August 23, 2012, plaintiff applied for SSI, alleging that her disability began on June 30, 2011. (AT 8, 173.) Plaintiff claimed that she was disabled due to major depression, mood disorder, and sleep issues. (AT 68, 80, 160.) After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on July 1, 2014. (AT 23–40.) The ALJ subsequently issued a decision dated October 31, 2014, determining that plaintiff had not been under a disability as defined in the Act, from August 23, 2012, the date the application was filed, through the date of the ALJ's decision. (AT 8–19.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on January 28, 2016. (AT 1–3.) Plaintiff subsequently filed this action on April 4, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II. ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly rejected the opinion of plaintiff's treating psychiatrist, Dr. Pappas; (2) whether the ALJ improperly discounted the credibility of plaintiff and her third-party witness; (3) whether the ALJ failed to make a proper step three determination regarding the listing of impairments; (4) whether the ALJ's residual functional capacity ("RFC") assessment lacks substantial evidence and is based on legal errors; (5) whether the ALJ's finding that plaintiff can perform other work in the national economy lacks substantial evidence; and (6) whether this case should be remanded for an award of benefits.[3] (ECF No. 15.)

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Plaintiff's opening brief raises the issues in a somewhat different order.

2

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

A. Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[4] At step one, the ALJ concluded that plaintiff has not engaged in

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing her past relevant work? If so, the

3

substantial gainful activity since August 23, 2012, that date of her application. (AT 10.) At step two, the ALJ found that the plaintiff "has the following severe impairments: degenerative disease of the cervical spine, cervical spondylosis without myelopathy, spinal stenosis in cervical region, obesity, hypertension, depressive disorder, anxiety disorder, history of attention deficit disorder, and headache impairment." (Id.) However, at step three the ALJ concluded that the plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (AT 11.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC, finding that plaintiff could perform light work as defined in 20 C.F.R. § 416.967(b), except that plaintiff:

> is limited to lifting 20 pounds occasionally and 10 pounds frequently. The claimant can stand or walk for about six hours in an eight-hour workday and sit for about six hours in an eight-hour workday. The claimant can occasionally climb ladders, ropes, and scaffolds. The claimant is limited to jobs where she would be able to understand, remember, and carry out simple and routine instructions. She can pay attention and concentrate in two-hour blocks of time.

(AT 13.) At step four the ALJ determined that the plaintiff is unable to perform any past relevant work. (AT 18.) However, at step five the ALJ found that, in light of plaintiff's age, education, work experience, RFC, and the vocational expert's ("VE") testimony, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (Id.)

Thus, the ALJ concluded that the plaintiff "has not been under a disability, as defined in the Social Security Act, since August 23, 2012, the date the application was filed." AT (19.)

/////

---

claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

B.     Plaintiff's Substantive Challenges to the Commissioner's Determinations

1. *Whether the ALJ improperly rejected the opinion of plaintiff's treating psychiatrist, Dr. Pappas*

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195, 1201–02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F.3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 830–31. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization. 20 C.F.R. § 404.1527.

5

On June 4, 2012, plaintiff's treating psychiatrist, Lynn Pappas, M.D. opined that plaintiff was suffering from episode of severe depression that rendered her non-functional and unable to get out of bed, and that she was not responding to medication as rapidly as anticipated. (AT 139.) Dr. Pappas estimated that plaintiff would be able to return to regular or customary work by September 1, 2012. (Id.) On June 18, 2013, Dr. Pappas opined that plaintiff is: (1) moderately impaired in her ability to understand, remember, and carry out short, simple instructions; (2) markedly impaired in her ability to make judgments on simple work-related decisions and to interact appropriately with the public, supervisors, and co-workers; and (3) extremely impaired in her ability to respond appropriately to work pressures and changes in a routine work setting. (AT 276–77.)

Dr. Pappas' opinion was contradicted by an examining psychologist and two reviewing psychologists. (AT 268–73, 177–85, 187–95.) Because Dr. Pappas's opinion was contradicted by other medical opinions in the record, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Pappas's opinion. For the reasons discussed below, the court finds that the ALJ properly discharged that duty.

First, the ALJ gave little weight to the opinion of Dr. Pappas because it was inconsistent with her own treatment notes that demonstrate plaintiff fails to take action or follow treatment plans to improve her symptoms. (AT 17.) The ALJ's determination is supported by numerous portions of Dr. Pappas's treatment notes: [February 3, 2013] "Patient is realizing that she fights against herself. She knows that not doing anything is making a choice to continue the way[] she is. . ." (AT 340.) [February 28, 2013] "She has had long term hx of poor follow through with treatment recommendations and she has a help rejecting quality to her as she presents." (AT 330.) [June 6, 2013] "Patient has physical issues that she is not addressing as well. She only occasionally will take her Lasix. She has not yet gotten the blood work that was ordered in Feb. Discussed with patient her need to be more proactive in her care and the fact that we cannot treat her appropriately if she is not invested in her own care." (AT 322.)

> [February 12, 2014] She has not taken her medications as she should and when I was confronting her about this and the need to get a blood level she has excuses as to why she doesn't get lab work

6

> done nor does she follow through with expected treatment. There is a big component of entitlement and expectation and externalization of blame. She does not get up in the morning. She sleeps in as late as she desires. She has limited motivation to do anything that does not interest her. She is banking on obtaining SSDI and has no desire to participate in any vocational rehabilitation. . . .
>
> I counseled her that she needs to be compliant with her medication at least 5 days. . . She is resistant to action and has not followed through with any recommendations we have given to get into vocational rehab and be productive. She is only focused on getting disability income.

(AT 286–87.) Pointedly, Dr. Pappas opined that plaintiff's case "is a very difficult situation to try and treat given the compliance issues." (AT 281.) Yet, as the ALJ observed, "Dr. Pappas fail[ed] to consider the extensive noncompliance issue in her opinions." (AT 17.)

Second, the ALJ gave little weight to Dr. Pappas's opinion, finding that it is "also inconsistent with the claimant's report that she gets along well with supervisors and has not had any employment issues." (Id.) The ALJ's finding is supported by plaintiff's October 18, 2012 Function Report wherein she attested that she has never been fired because of problems getting along with other people and that she gets along "fine" with authority figures, such as bosses. (AT 193.)

Third, the ALJ substantially relied upon the opinion of consultative examiner, Richard Palmer, Ph.D. (AT 16.) The ALJ gave great weight to Dr. Palmer's opinion that plaintiff "is able to perform one or two-step simple repetitive tasks. . . [and] has good ability to accept instructions from supervisors and interact with coworkers and the public" because these findings are consistent with plaintiff's own testimony regarding her "significant and independent activities of daily living" and her treating notes "showing that [she] at times had difficulties with attention, focus, and follow through." (Id.) Because Dr. Palmer personally examined plaintiff and made independent clinical findings, his opinion constitutes substantial evidence on which the ALJ was entitled to rely.

Fourth, the ALJ properly relied on the opinion of non-examining state agency consultative psychologists, Preston Davis, Psy.D., and Paul Klein, Psy.D., who reviewed plaintiff's records on February 2, 2013, and August 27, 2013, respectively, and opined that while plaintiff's condition

7

results in some limitations in her ability to perform work related activities, it is not severe enough to keep her from working. (AT 78, 90.) See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record.").

Therefore, the court finds that the ALJ provided several specific and legitimate reasons for discounting Dr. Pappas's opinion.

### 2. *Whether the ALJ improperly discounted the credibility of plaintiff and her third-party witness.*

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the

"'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

      i.    Credibility of plaintiff

The ALJ found that plaintiff's "allegations of disabling mental impairments are not fully credible." (AT 15.) Specifically, the ALJ found that plaintiff's impairments are not as severe as she alleges because she "indicated that she suffered from depression her whole life, yet, she was able to work for two years prior to her alleged onset date." (Id.) The ALJ also pointed to the fact that plaintiff was a stay at home mom who cared for her daughter prior to 2010, "which also suggests that she performed significant activities of daily living to care for her child for numerous years." (Id.) Furthermore, the ALJ relied on plaintiff's own assertions that she "cares for herself, drives herself to appointments, and does not need reminders to complete tasks." (AT 17.) Substantial evidence supports the ALJ's finding that plaintiff's assertions and daily activities are inconsistent with her allegations of disabling mental impairments.

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in

the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

Here, plaintiff also admitted to providing basic care to her two dogs. (AT 188.) Moreover, she conceded that she does not require any assistance dressing, bathing, feeding herself, making her own meals, doing housework and laundry, driving, and shopping. (AT 188–90.)

To be sure, the record also contains some contrary evidence, such as plaintiff's testimony that her depression has gotten worse over the past year, that she cries all the time, and has difficulty getting out of bed, suggesting that plaintiff's activities are more limited. (AT 29, 31, 35.) However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ . . . Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

Additionally, the ALJ found that plaintiff is "noncompliant with prescribed treatment, which suggests that her physical and mental impairments are not as disabling as she alleges." (AT 15.) "We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment . . . Moreover, a claimant's failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." Molina, 674 F.3d at 1113-14 (citation and

10

quotation marks omitted).

Substantial evidence supports the ALJ's finding that plaintiff's failure to follow her prescribed treatment undermines her credibility. Dr. Pappas observed that plaintiff "admits to not taking her medication regularly and this non compliance has been an issue for her for a long period of time." (AT 330.) Plaintiff also admitted that she is fighting against herself and not doing anything to help herself. (AT 340.) Furthermore, Dr. Pappas opined that plaintiff "has a big component of entitlement and expectation and externalization of blame. . . . She is banking on obtaining SSDI and has no desire to participate in any vocational rehabilitation. . ." (AT 286–87.)

Therefore, the court finds that the ALJ's credibility finding regarding plaintiff is supported by substantial evidence in the record.

### ii. Testimony of third-party lay witness

The ALJ gave little weight to the third-party function report of plaintiff's friend, Gina Vercruyssen because the ALJ found that plaintiff's "mental impairments are not as disabling as Ms. Vercruyssen and the [plaintiff] suggest." (AT 18.) "[C]ompetent lay witness testimony cannot be disregarded without comment" and "in order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (internal quotation and citation omitted).

Here, the ALJ pointed out that Ms. Vercruyssen alleged the same limitations as plaintiff reported herself. (AT 17.) Specifically, that plaintiff "has trouble with talking, concentration, memory, completing tasks, understanding, and following instructions." (Id.) The ALJ concluded that the testimony of plaintiff and Ms. Vercruyssen does not support these allegations. (Id.) The ALJ found that while plaintiff "does have some limitations in mental functioning, [she] is able to do significant activities of daily living without supervision." (Id.) This conclusion is supported by the reports of plaintiff and Ms. Vercruyssen that demonstrate that "plaintiff cares for herself, drives herself to appointments, and does not need reminders to complete tasks." (Id.; see AT 177–85, 187–95.)

Therefore, the court finds that the ALJ's credibility finding regarding Ms. Vercruyssen is supported by substantial evidence in the record.

3. *Whether the ALJ failed to make a proper step three determination regarding the listing of impairments.*

The claimant "bears the burden of proving that . . . she has an impairment that meets or equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations." Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. . . . For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 530-31 (1990). A determination of medical equivalence must rest on objective medical evidence. See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) ("A finding of equivalence must be based on medical evidence only."); Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999) ("Medical equivalence must be based on medical findings. . . . A generalized assertion of functional problems is not enough to establish disability at step three."); 20 C.F.R. § 404.1529(d)(3) ("In considering whether your symptoms, signs, and laboratory findings are medically equal to the symptoms, signs, and laboratory findings of a listed impairment, we will look to see whether your symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria. However, we will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed impairment."). Furthermore, "[t]he mere diagnosis of an impairment listed in Appendix 1 is not sufficient to sustain a finding of disability." Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985). Instead, all of the specified medical criteria must be met or equaled. Id. at 1550.

The ALJ determined that plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06." (AT 11.) The ALJ specifically looked at whether the "paragraph B" criteria are satisfied. (Id.) "Paragraph B" requires that the mental impairments result in at least two of the following: marked restriction

of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation. See 20 C.F.R. Part 404, Subpart P, Appendix 1, section 12.04.

On appeal, plaintiff disputes the ALJ's determination arguing that her impairment satisfies the "paragraph B" criteria because "[t]he record shows that Ms. Hubbard has both marked restriction of activities of daily living and marked difficulties in maintaining social functioning." (ECF No. 15 at 21.) Specifically, plaintiff points to testimony and medical notes that show that she "spends most days in bed, and gets up only to take her dogs out or go to appointments." (Id.) "In addition, the treating psychiatrist, Dr. Pappas, opined that Ms. Hubbard is markedly impaired in her ability to interact appropriately with the public, supervisors, and co-workers." (Id.) However, plaintiff's arguments are unavailing. Even assuming that plaintiff is correct that she has marked restriction of activities of daily living, she has failed to meet her burden to prove that she satisfies any other criterion of "paragraph B." As explained above, the ALJ properly gave little weight to Dr. Pappas's opinion. Therefore, pointing to Dr. Pappas's conclusions regarding plaintiff's ability to interact with the public, supervisors, and co-workers is not sufficient to prove that plaintiff is impaired under "paragraph B."

Thus, the ALJ made a proper step three determination because substantial evidence supports the ALJ's finding that plaintiff did not satisfy the "paragraph B" criteria, and plaintiff has not meet her burden to prove otherwise.

4. *Whether the ALJ's residual functional capacity ("RFC") assessment lacks substantial evidence and is based on legal errors.*

For the reasons discussed above, the court finds that the ALJ appropriately evaluated the medical opinion evidence and plaintiff's credibility. As such, plaintiff's argument that the RFC is without substantial evidence support is not well taken.

////

////

////

////

> 5. *Whether the ALJ's finding that plaintiff can perform other work in the national economy lacks substantial evidence and whether this case should be remanded for an award of benefits.*

Plaintiff argues that the ALJ's finding that plaintiff "can perform other work in the national economy lacks substantial evidence to support it because the hypothetical questions posed to the VE were . . . based on an erroneous RFC." However, as explained, the RFC was based upon substantial evidence. Therefore, plaintiff's argument regarding the ALJ's step five determination is not well taken.

Throughout her briefing, plaintiff also raises several other arguments, which are ultimately unpersuasive. For example there are no grounds to remand this case for an award of benefits, as there is no error warranting remand in the first instance.

## V. CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision was free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) be DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 22) be GRANTED.

3. Judgment is be entered for the Commissioner.

4. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th

Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156–57 (9th Cir. 1991).

IT IS SO RECOMMENDED.

Dated: June 28, 2017

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/16-710.F&R re MSJ

15